JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

AUG 13 1979

8/13/79

PATRICIA D. HOWARD
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE AIR CRASH DISASTER NEAR )
CHICAGO, ILLINOIS, ON MAY 25, )   DOCKET NO. 391
1979                          )

OPINION AND ORDER

BEFORE MURRAY I. GURFEIN, CHAIRMAN, AND EDWIN A. ROBSON,
STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, AND
CHARLES R. WEINER, JUDGES OF THE PANEL.

WEIGEL, Judge of the Panel

    I.   BACKGROUND

    On May 25, 1979, a McDonnell Douglas DC-10 jet aircraft

being operated by American Airlines (American) crashed shortly

after take-off from O'Hare International Airport in Chicago,

Illinois.  The 258 passengers and thirteen crew members

aboard the DC-10,[1] and two persons on the ground, died

in the crash.  In addition, several persons on the ground

were injured and substantial property damage occurred at

the crash site.

    At the time of the hearing, sixteen actions arising

from the disaster were before us on motions to transfer

them to a single district pursuant to 28 U.S.C. §1407 for

---

[1]   We have been advised that of the decedents aboard the
DC-10, approximately 135 resided in the southern California
area, approximately 70 in the Chicago area, and that the
rest were residents of New York, Hawaii, Massachusetts,
Wisconsin, Michigan, Maine, Texas, or one of twelve foreign
countries.

coordinated or consolidated pretrial proceedings.[2]   Twelve of these actions are pending in the Northern District of Illinois; three in the Central District of California; and one in the Southern District of New York.  American and McDonnell Douglas are defendants in all the actions.  General Electric Company, manufacturer of the engines, is a defendant in most.  Rockford Aerospace Products, Inc., the alleged manufacturer of certain bolts installed on the engine mountings, is named as a defendant in one.  Plaintiffs in the actions allege that the conduct of the defendants in the design, manufacture, maintenance and/or operation of the American DC-10 caused the crash.  Plaintiffs rely, inter alia, on theories of negligence and strict liability.

All parties favor transfer of the actions to a single district for coordinated or consolidated pretrial proceedings. The sole dispute among them is as to which district that should be.  Three different districts have been suggested -- the Northern District of Illinois, by the plaintiffs there and by all four defendants; the Central District of California, by the plaintiffs there; and the Southern District of New York, by the plaintiff there.

---

[2]   All parties have stated in writing their respective positions on the motions before us and have either appeared at the hearing or have waived oral argument.  The Panel has been advised that 46 other actions arising from this air disaster are now pending in federal district courts. It is anticipated that many more such actions will be filed in the future.  As the additional actions come to our attention they will be considered for transfer as "tag-alongs".  See Rules 1, 9 and 10, R.P.J.P.M.L., 78 F.R.D. 561, 562, 567-69 (1978).

II.  HOLDING

Acting under the governing statute (28 U.S.C. §1407), we find that these actions involve common questions of fact and determine that their transfer to the Northern District of Illinois for coordinated or consolidated pretrial proceedings will best serve the convenience of the parties and witnesses and best promote the just and efficient conduct of all the actions before us.

III.  THE NEED FOR CENTRALIZED PRETRIAL PROCEEDINGS

The cases now before us present a prime example of the need which gave rise to enactment of Section 1407. See, e.g., 114 Cong. Rec. 4924, 4925, 4926 (1968).  If these actions were not transferred as authorized by that statute, there inevitably would be repetitious depositions of scores of witnesses, repetitious examinations of thousands of documents, and yet other myriad duplications of pretrial proceedings.  Much time and effort of numerous parties, witnesses, attorneys and judges would be needlessly wasted.  That waste would be exceptionally serious in these cases because of the unusually complex issues they involve.  Centralization for pretrial proceedings will also serve the salutary purposes of forestalling conflicts in pretrial rulings and of otherwise streamlining pretrial proceedure.  See, e.g., In re Air Crash Disaster at Huntington, West Virginia, on November 14, 1970, 342 F. Supp. 1400, 1402 (J.P.M.L. 1972).

1       We are sensitive to the fact that many of the parties

2   in the actions before us have suffered the grievous loss

3   of loved ones.  We appreciate that centralization of these

4   actions in any one district may cause some parties some

5   inconvenience occasioned by the sheer mechanics of transfer.

6   See In re "East of the Rockies" Concrete Pipe Antitrust

7   Cases, 302 F. Supp. 244, 254-55 (J.P.M.L. 1969) (concurring

8   opinion).  Overall, however, our experience with some 400

9   groups of multidistrict litigation over the past eleven

10   years satisfies us that all parties in the litigation at

11   bar will benefit from significant savings of time, effort

    and expense as a result of pretrial centralization.

12       Because transfer is solely for pretrial purposes, there

13   is no requirement that parties or witnesses travel to the

14   transferee district.  See, e.g., Fed. R. Civ. P. 26(c)(2),

15   45(d)(2).  Furthermore, since all plaintiffs in these cases

16   have practically identical interests on issues of liability,

17   sensible use of liaison counsel, lead counsel and steering

18   committees can do more than trim the pretrial process.

     By providing an efficient and economical means of representing

19   the interests of all parties, it can also eliminate the

20   need for most counsel to travel to the transferee district.

21   See Manual for Complex Litigation, Parts I and II, §§1.90-1.93

22   (rev. ed. 1977 and cum. supp. 1978). Concentrating counsel

23   participation will not preclude all parties and their attorneys

24   from keeping abreast of all developments in the litigation.

     See also id. at Parts I and II, §§2.31.

25

- 5 -

Case MDL No. 391   Document 2   Filed 05/19/15   Page 5 of 17

## IV.   FACTORS DETERMINING CHOICE OF TRANSFEREE DISTRICT

The plaintiffs favoring the Central District of California as the transferee forum contend that the liability phase of this litigation will focus upon the design of the DC-10.  In urging transfer to that district, they point out that the aircraft was designed, manufactured and assembled by McDonnell Douglas at its Long Beach, California facility; that the aircraft was certified as airworthy by the Federal Aviation Administration (FAA) operating out of the FAA's Western Regional Office in Los Angeles; that McDonnell Douglas plans to conduct tests in the Los Angeles area on the type of aircraft involved in the crash; that recommended maintenance procedures for the DC-10 were developed by McDonnell Douglas in Long Beach; that McDonnell Douglas trained American's personnel in maintenance procedures and techniques in Los Angeles; that approximately one-half of the victims lived in the southern California area (almost twice as many as those who lived in the Chicago area) and that it is therefore to be expected that more suits will be filed in the Central District of California than anywhere else; that California law will likely govern the actions filed there, and a California court is better able than one in Illinois to apply California law.  The California plaintiffs also contend that if the actions are transferred to Illinois for pretrial, the transferee court might keep them there for trial based upon the provisions of 28 U.S.C. §1404(a).  In that case, they declare, they would be prejudiced because they seek punitive damages and

FPI—MAR—3-27-79-6M-1781

would be compelled to present the testimony of the allegedly
culpable McDonnell Douglas officers and employees to a jury
by the use of depositions, rather than by live testimony
pursuant to trial subpoena.3/

The plaintiff in the Southern District of New York
action before the Panel asserts that the Panel should centralize
this litigation in that district because (1) New York is
conveniently located to Washington, D.C., where the FAA
and the National Transportation Safety Board maintain their
headquarters, thus facilitating discovery of the findings
of those two bodies; (2) American has its principal place
of business in New York; (3) two insurance carriers involved
in this litigation maintain offices there; and (4) New York
is conveniently located for the attorneys in this litigation.

The plaintiffs in the Northern District of Illinois
point out that the Panel has usually centralized domestic
air disaster litigation in the district where the crash
occurred.  See, e.g., In re Air Crash Disaster at Stapleton
International Airport in Denver, Colorado, on August 7,
1975, 447 F. Supp. 1071 (J.P.M.L. 1978); In re Air Crash
Disaster at John F. Kennedy International Airport on June
24, 1975, 407 F. Supp. 244 (J.P.M.L. 1976).  They also point
out that most of the reasons which have customarily underlain

_____

3/  This argument, however valid it may be, is one most appro-
priately addressed to the transferee court in opposition to
any transfer to that court for trial.  See In re Anthracite
Coal Antitrust Litigation; 436 F. Supp. 402, 403-04 (J.P.M.L.
1977);  In re Air Crash Disaster at Paris, France, on March 3,
1974, 386 F. Supp. 1404, 1405 (J.P.M.L. 1975).

our "situs of the crash" rule are present here. For example, many of the eyewitnesses to the accident, including the air traffic controllers, are located in the Chicago area. So are numerous relevant photographs, videotapes and films. The FAA office located near Chicago was responsible for approving the engine which allegedly fell from the DC-10 during this disaster.

We have evaluated and weighed all the relevant factors, and conclude that the Northern District of Illinois is the best for the conduct of coordinated or consolidated pretrial proceedings in this litigation.  In addition to the reasons already noted which favor the Northern District of Illinois as the transferee district, many of the considerations urged in support of transfer to the Central District of California as well as many of those urged in support of the Southern District of New York combine to make the Northern District of Illinois the best forum for pretrial proceedings.  Transfer either to New York or southern California would require transcontinental travel for those attorneys and parties located on one side of the continent who need or desire to participate in pretrial proceedings conducted at the other.  Moreover, it is clear on the facts before us that pretrial proceedings concerning liability issues will focus on at least six different geographic areas:  California; New York; Chicago; Washington, D.C.; Oklahoma (the location of American's primary maintenance facility); and Ohio (where the engine was manufactured). Thus, the Northern District

of Illinois, with its central location and concomitant ease
of accessibility, stands out as the most appropriate transferee
forum.[4/]   See In re Government Auto Fleet Sales Antitrust
Litigation, 328 F. Supp. 218, 220 (J.P.M.L. 1971); In re
Library Editions of Children's Books, 297 F. Supp. 385,
387 (J.P.M.L. 1968).

The fact that the transferee court may have occasion
to apply non-Illinois law to some of the actions in this
litigation serves as no impediment to Section 1407 transfer.
As we stated in In re Air Crash Disaster at John F. Kennedy
International Airport on June 24, 1975, supra, 407 F. Supp.
at 246-47:

> [I]t is within the very nature of coordinated
> or consolidated pretrial proceedings in multidistrict
> litigation for the transferee judge to be called upon
> to apply the law of more than one state.  See, e.g.,
> In re Air Crash Disaster at Boston, Massachusetts,
> on July 31, 1973, 399 F. Supp. 1106 (D.Mass. 1975).
> Thus, [all parties] can be assured that [the law of
> the transferor district], as well as any other state's
> law, if appropriate, will be duly applied by the transferee
> judge.

In considering such matters as the place of trial and
special legal issues, the relevant provisions of Section
1407 and Rule 11, R.P.J.P.M.L., 78 F.R.D. 561, 569-71 (1978),

---

4/  Convenience of counsel often coincides with convenience of
the parties they represent and is a factor to be considered
under Section 1407.  See In re Anthracite Coal Antitrust Liti-
gation, supra, 436 F. Supp. at 403; In re San Juan, Puerto Rico,
Air Crash Disaster Litigation, 316 F. Supp. 981, 982 (J.P.M.L.
1970).  See also In re Government Auto Fleet Sales Antitrust
Litigation, 328 F. Supp. 218, 219-20 (J.P.M.L. 1971).

should be kept in mind. Once common pretrial proceedings and any other pretrial proceedings that the transferee court considers appropriate have been completed in the transferee district, each transferred action is to be remanded by the Panel for further pretrial and trial to the district from which each action was transferred. See, e.g., In re A. H. Robins Co., Inc., "Dalkon Shield" IUD Products Liability Litigation, 453 F. Supp. 108, 110 (J.P.M.L. 1978); In re Air Crash Disaster near Dayton, Ohio, on March 9, 1967, 386 F. Supp. 908, 909 (J.P.M.L. 1975); In re "East of the Rockies" Concrete Pipe Antitrust Cases, supra, 302 F. Supp. at 254 (concurring opinion). In appropriate circumstances, various transferee judges have even obtained an intercircuit assignment pursuant to 28 U.S.C. §292(d) to conduct the remaining pretrial proceedings and trial in a transferor district.[5]

_____

5/   This procedure was recently implemented in In re Air Crash Disaster at Tenerife, Canary Islands, on March 27, 1977 (MDL-306), which the Panel had centralized in the Southern District of New York. After a number of actions in that litigation had been remanded by the Panel to the Northern and Central Districts of California, the Panel aided the transferee judge in obtaining an intercircuit assignment so that he could conduct trials in the remanded actions in those two California districts. In another multidistrict docket, In re Republic National-Realty Equities Securities Litigation (MDL-174), the Panel assisted the transferee judge, presiding over the pretrial proceedings in the Southern District of New York, to secure an intercircuit assignment to sit in the Northern District of Texas upon his determination that some actions should be transferred for all purposes to the Northern District of Texas under Section 1404(a).

A Section 1407 transferee judge does, of course, have the power under Section 1404(a) to transfer actions in the transferee district to that district or to any other appropriate district for all purposes. See, e.g., Pfizer, Inc. v. Lord, 447 F.2d 122, 124-25 (2d Cir. 1971); In re Aircrash near Duarte, California, on June 6, 1971, 357 F. Supp. 1013, 1015-16 (C.D.Cal. 1973); Rule 11(b), R.P.J.P.M.L., supra, 78 F.R.D. at 569. It is also true that most actions transferred pursuant to Section 1407 are not remanded to their transferor districts, either because the actions are terminated prior to trial by settlement or otherwise in the transferee district, or because the actions are transferred by the transferee court under Sections 1404(a) or 1406. In any case, the Panel has neither the authority nor the desire to control decisions of the transferee judge made in the actual conduct of coordinated or consolidated pretrial proceedings. See, e.g., In re Westinghouse Electric Corporation Uranium Contract Litigation, 436 F. Supp. 990, 996 (J.P.M.L. 1977); In re Anthracite Coal Antitrust Litigation, supra, 436 F. Supp. at 403-04; In re Equity Funding Corporation of America Securities Litigation, 375 F. Supp. 1378, 1384 (J.P.M.L. 1974). One of the virtues of coordinated or consolidated pretrial proceedings under Section 1407 is that all pretrial rulings, including Section 1404(a) determinations, are made by a transferee judge who, from day-to-day supervision over all aspects of the litigation, is in the best position to

consider and protect the rights of all concerned.[6/]   See,

e.g., In re Uranium Industry Antitrust Litigation, 458 F.

Supp. 1223, 1230 (J.P.M.L. 1978).

V.   CONCERNING NOTICE TO NON-LITIGANTS

Plaintiff in one of the California actions now before

us has moved the Panel (1) to direct a notice concerning

the pendency of the present motions before the Panel to

the families of all victims, regardless of whether or not

they have brought suit; (2) to advise these families in

the notice that their rights may be affected by the Panel's

decision; and (3) to defer further consideration of these

motions until the notice has been disseminated and the re-

cipients have had an opportunity to appear at another Panel

hearing on this matter.

This plaintiff argues that Section 1407(c) bestows

upon the Panel the inherent power to notify potential litigants

of the proceedings before it, and that constitutional

---

6/   For this very reason the Panel, in considering remand
of any action previously transferred under Section 1407,
places great weight on a transferee judge's suggestion that
remand has become appropriate.  See, e.g., In re A. H. Robins
Co., Inc., "Dalkon Shield" IUD Products Liability Litigation,
supra, 453 F. Supp. at 110.  Similarly, any party before
the Panel advocating remand of an action without first obtaining
a recommendation of remand from a transferee judge bears
a strong burden of persuasion.  See, e.g., In re Holiday
Magic Securities and Antitrust Litigation, 433 F. Supp.
1125, 1126 (J.P.M.L. 1977).

considerations of due process impose upon it the duty to do so. [7]

[7]   This plaintiff further argues that the Panel's decision is of vital importance to all litigants and potential litigants, and that the proposed notice is particularly crucial in the context of the present litigation because United States Aviation Underwriters Group, "the insurance consortium behind American Airlines," has directly communicated with the families of victims in an attempt to dissuade those families from initiating litigation.  In one of a series of letters to these families, United States Aviation Underwriters Group states, inter alia, as follows:

> You may find yourselves under pressure to sign a contingent fee retainer with an attorney whereby his fee is a percentage of the final award.  The rationale for such a percentage fee is that the lawyer risks getting no fee if there is no recovery.  There is also nothing to be gained by a precipitous lawsuit.  We do suggest that it would be in your best interest to evaluate the offers which will be made to you and obtain the help of your attorney based upon a fee for the work involved rather than a percentage of the settlement or award.

> Immediate legal action is unnecessary to avoid permitting applicable time periods (e.g., statutes of limitations, etc.) to expire.  Should settlement discussions not ultimately result in a termination of any claims that might exist, we provide a reasonable extension of any applicable time limitation based upon the facts and circumstances of the individual case in order that you will have ample time to take any path you choose as to counsel you retain, the basis upon which he is paid or whether you wish to institute a lawsuit.  Please do not be rushed into limiting your alternatives or committing yourselves needlessly to an inordinate legal expense.

Regardless of the merits as to giving such notice to non-litigants, we lack the power to require it.  When faced with a very similar request in In re Air Crash Disaster at Tenerife, Canary Islands, on March 27, 1977, 435 F. Supp. 927, 929 (J.P.M.L. 1977), we held as follows:  "The Panel is not empowered to enter such an order under Section 1407.... A request of this type should be presented to the federal district court in which one of the constituent actions was originally filed or to the transferee court following transfer under Section 1407." We feel compelled to emphasize again here that Section 1407 in no way authorizes the Panel to transmit notice of the pendency of proceedings before the Panel to potential litigants.

In this connection, Section 1407(c) provides that: "The [P]anel shall give notice to the parties in all actions in which transfers for coordinated or consolidated pretrial proceedings are contemplated, and such notice shall specify the time and place of any hearing to determine whether such transfer shall be made." (Emphasis added).  The term "party" can have a number of different meanings, determined primarily by the context in which the term is utilized.  As one court has observed:

> In its broadest meaning the word 'party' includes one concerned with, conducting, or taking part in any matter or proceeding, whether he is named or participates as a formal party or not.  In a variety of situations persons not named in [an action] and not appearing in any formal capacity have been held to be 'parties' or 'a party to' litigation in which they were concerned or affected.  (Footnote containing numerous definitions of the term 'party' and footnote containing numerous citations omitted.)

<u>Fong Sik Leung v. Dulles</u>, 226 F.2d 74, 81 (9th Cir. 1955)(concurring opinion).  We are convinced, however, that this broad meaning cannot be attributed to "party" or "parties" as used in Section 1407(c).  The term "parties" in Section 1407(c) is unequivocally limited to "<u>parties in all actions in which transfers... are contemplated</u>" (emphasis added). Moreover, the demand for notice to potential litigants would involve the Panel's intrusion into decisions made appropriately only by trial and appellate courts or by Congress.  While we find no merit in any claim that any constitutional right is violated by failure to give notice to potential litigants, we express no opinion as to the desirability of the giving of such notice by an appropriate court when feasible.

Unless and until Congress amends Section 1407 to authorize the Panel to issue notice of the pendency of proceedings before the Panel to non-litigants, we must deny motions for issuance of such notices even when feasible.  For an interesting case dealing with these questions, see <u>Pan American World Airways, Inc. v. United States District Court for the Central District of California</u>, 523 F.2d 1073 (9th Cir. 1975).

Finally, we see no reason why we should defer our ruling in this litigation.  The record is **sufficiently developed** for us to make an informed decision as to transfer and as to the appropriate transferee district.  <u>See In re Air Crash Disaster near Saigon, South Vietnam, on April 4, 1975</u>, 404 F. Supp. 478, 479 n. 1 (J.P.M.L. 1975).  Indeed, many of

the benefits of coordinated or consolidated pretrial proceedings
-- for example, conserving the time and effort of the parties,
witnesses, attorneys and judges; avoiding duplicative discovery
and other pretrial efforts; and eliminating the possibility
of conflicting rulings -- can best be accomplished by Section
1407 transfer at the earliest possible date.  Cf., e.g.,
In re Women's Clothing Antitrust Litigation, 455 F. Supp.
1388, 1390-91 (J.P.M.L. 1978)(litigation not transferred
because of advanced stage of pretrial proceedings in the
actions).

    Tag-along actions filed outside the transferee district
can be quickly transferred there by the Panel under Section
1407 through use of conditional transfer orders.  See Rule
9, R.P.J.P.M.L., supra, 78 F.R.D. at 567-68.  Tag-along
actions originally filed in the transferee district are
directed to the transferee judge or judges pursuant to local
court rules for the assignment of related actions and require
no Panel involvement.  See Rule 10(a), id. at 568.  And
all tag-along actions can be smoothly integrated under the
guiding hand of a transferee judge into the coordinated
or consolidated pretrial proceedings.  See In re Pennsylvania
Life Company Securities Litigation, 436 F. Supp. 406, 408
(J.P.M.L. 1977); Manual for Complex Litigation, supra, Parts
I and II, §§3.11.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Northern District of Illinois be, and the same hereby are, transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Edwin A. Robson and the Honorable Hubert L. Will for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.   Each transferee judge shall have total jurisdiction over the coordinated or consolidated pretrial proceedings in this litigation and each judge may act individually and/or jointly with respect to those pro-ceedings.

MDL-391                                              SCHEDULE A

### CENTRAL DISTRICT OF CALIFORNIA          CIVIL ACTION NO.

| | |
|---|---|
| Myrna Stogel, etc. v. McDonnell Douglas Corp., et al. | 79-1960-WMB |
| George W. Nordhaus, et al. v. McDonnell Douglas Corp., et al. | 79-2112-MRP |
| Yie-Chen Lin, et al. v. McDonnell Douglas Corp., et al. | 79-2116-LTL |

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shutao H. Lin, etc. v. McDonnell Douglas Corp., et al. | 79 Civ. 3195 |

### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Thomas S. Ziemba, etc. v. McDonnell Douglas Corp., et al. | 79C2428 |
| State National Bank, etc. v. McDonnell Douglas Corp., et al. | 79C2427 |
| State National Bank, etc. v. McDonnell Douglas Corp., et al. | 79C2426 |
| State National Bank, etc. v. McDonnell Douglas Corp., et al. | 79C2425 |
| LaSalle National Bank, et al. v. American Airlines, Inc., et al. | 79C2311 |
| Roy S. Lang, et al. v. McDonnell Douglas Corp., et al. | 79C2381 |
| Leila B. Gemme, etc. v. American Airlines, Inc., et al. | 79C2182 |
| Inge Maria Kahl, etc. v. McDonnell Douglas Corp., et al. | 79C2175 |
| Inge Maria Kahl, etc. v. McDonnell Douglas Corp., et al. | 79C2307 |
| Andrew Bellavia, et al. v. McDonnell Douglas Corp., et al. | 79C2333 |
| Merikay Spicuzza, etc. v. American Airlines, Inc., et al. | 79C2310 |
| Jewel Valladares, etc. v. American Airlines, et al. | 79C2309 |